## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Case No. CA14-175** |
| | : | |
| **STATE OF RHODE ISLAND,** | : | |
| Defendant. | : | |

### MOTION TO INTERVENE

Now come Petitioners and seek to intervene in the above-captioned matter and to address the Court for the following reasons:

1. Petitioners are a group of non-profit corporations that provide services to individuals with intellectual and/or physical disabilities. The providers are Community Living of Rhode Island, Inc.; AccessPoint RI; Gateways To Change, Inc.; Seven Hills, Inc.; Looking Upwards, Inc.; The Frank Olean Center, Inc.; The Fogarty Center; West Bay Residential Services, Inc.; and United Cerebral Palsy of Rhode Island, Inc. (hereinafter Intervenors).

2. The Intervenors under the provisions of R.I.G.L. 40.1-24-1 provide services to Rhode Island residents who are developmentally disabled and who under that statute are eligible for services.

3. Programs for developmentally disabled individuals in the State of Rhode Island fall under the auspices of the Rhode Island Department of Behavioral Health, Developmental Disabilities and Hospitals (BHDDH). The programs for developmentally disabled individuals are administered within BHDDH by the Division of Developmental Disability.

4. The State of Rhode Island, under R.I.G.L. 40.1-21-4.2 is obligated to ensure that each developmentally disabled adult in this State receives "such developmental, supportive, and

1

ancillary services as prescribed in an individualized program plan developed with the participation of the developmentally disabled person."

5. In June 2013 and April 2014 the State of Rhode entered into a consent decree with the Department of Justice. The agreements ensure compliance with the Americans with Disabilities Act, which the State violated by failing to serve individuals with developmental disabilities in the most integrated, appropriate setting, and by placing youth with developmental disabilities at serious risk of segregation.

6. The consent decree broadly provides that the State of Rhode Island is required to offer individuals with intellectual or developmental disabilities opportunities to work in real jobs at competitive wages and supports for integrated activities for times when the individuals are not at work. The stated goal of the State in complying with the Consent Decree is to provide the approximately 3,250 individuals with intellectual and developmental disabilities in the system with integrated employment and day services.

7. Intervenors are among a group of approximately thirty (30) providers in the State of Rhode Island which are actually tasked with integrating individuals with intellectual and developmental disabilities into their communities with the same opportunities and responsibilities as all citizens. This includes, among other things, ensuring that individuals with intellectual and developmental disabilities receive community integration as well as employment opportunities and services in the community. The Intervenor group is on the front lines in offering and providing both supported employment services and integrated day services as those terms are defined in the Consent Decree.

8. Eligible individuals with intellectual or developmental disabilities are provided a quarterly service package that may include funding for such items as day program services, residential supports, support coordination services, transportation services, as examples. Individuals with intellectual or developmental disabilities are then able to select a provider from whom they can receive the amount of services for which they are funded. Intervenors are all providers of services to individuals with intellectual or developmental disabilities and are

reimbursed for the services they provide to individuals with intellectual or developmental disabilities by the State/BHDDH through the funding allotted to each individual served.

9. Over the last several years (beginning in 2012) the State has significantly reduced the amount of funding to BHDDH for the services available to individuals with intellectual or developmental disabilities. For example, in 2012 the State cut over $30 million dollars from the BHDDH budget associated with the funding of services for individuals with intellectual or developmental disabilities. This year, after two years where a total of approximately $11 million was allocated by the General Assembly to increase direct service rates, the Governor's budget is seeking to reduce funding to BHDDH by approximately $18 million. If this budget is approved with these reductions, Intervenors will be unable to continue to engage in the necessary job coaching, training, assisting and general employment support services individuals with developmental disabilities are entitled to and as mandated under the Consent Decree.

10. The State's failure to adequately fund BHDDH and DDD with specific regard to the services Intervenors provide for individuals with developmental disabilities has significantly crippled the developmental disability system. The State of Rhode Island and the Governor's pending budget cut of an additional 18 million dollars from the BHDDH/DDD budget for the fiscal year 2019 will further devastate the system. Due to the significant lack of proposed funding by the State of Rhode Island to BHDDH and DDD, such a cut will effectively shut down any ability on the part of Intervenors to continue to offer supported employment services or integrated community programs for individuals with developmental disabilities.

11. The failure of the State of Rhode Island to adequately fund BHDDH/DDD in order to adequately reimburse Intervenors for the services provided to individuals with developmental disabilities will directly impact the State of Rhode Island's ability to comply with the Consent Decree as Intervenors will be unable to perform few, if any, job related services for individuals with developmental disabilities on a going forward basis.

12. Intervenors hereby petition this Court to allow them to intervene in this matter in order to provide the Court with evidence of the State of Rhode Island's ongoing failure to

adequately fund not only the existing DD system, but to provide the needed funds to enable the terms of the Consent Decree to be complied with as more fully described in the document. Intervenors believe their participation in the pending matter before the Court is essential and necessary.

Intervenors respectfully request that they be allowed, through their counsel, to address the Court at the April 10, 2018 hearing on the significant issues raised herein.

Respectfully submitted,
INTERVENORS
By Their Attorney:

_____
JEFFREY W. KASLE, ESQ. (#2695)
*Of Counsel*
Olenn & Penza
Warwick, Rhode Island 02886
Tel. 401-737-3700; Fax. 401-737-5499
eMail: jwk@olenn-penza.com

## CERTIFICATE OF SERVICE

I hereby certify that, on the 6th day of April, 2018:

[X]  I filed and served this document through the electronic filing system on the following parties: Virginia Thomas, Attorney, Department of Justice and Marc DeSisto, Esq., for the State of Rhode Island. The document electronically filed and served is available for viewing and/or downloading from the Court's Electronic Filing System.

[ ]  I served this document through the electronic filing system on the following parties: _____. The document electronically served is available for viewing and/or downloading from the Court's Electronic Filing System.

[ ]  I mailed or □ hand-delivered this document to the attorney for the opposing party and/or the opposing party if self-represented, whose name is _____ at the following address _____.

_____