# ATTACHMENT 1

## Scope of Services and Role of the Monitor

**Purpose:**

    1) To list the Consent Decree (CD) requirements of the Monitor; and

    2) To list the shared preferences of the State of Rhode Island (Defendant) and United States (collectively, Parties) regarding how the Monitor performs the required functions to support the ongoing work related to Consent Decree compliance.

This information will be shared with any new court monitor to provide clarity on the Parties' expectations and will be tailored in the scope of work within the new Court Monitor's contract. This document does not alter the terms of the Consent Decree or Interim Settlement Agreement, and neither the Parties nor the Monitor is bound by the provisions of Section II of the document, which reflect preferences but are not necessarily required by the Consent Decree or Interim Settlement Agreement.

**I.    Consent Decree Requirements of the Monitor.**

    Below is a brief summary of CD provisions related to the Monitor grouped into main categories. Please review the CD for the complete provisions.

    a. Will review compliance:
        i. "The State will document for continuous review by the Monitor" and the Monitor will request and review data showing the State's efforts in offering supported employment services and integrated day services and complying with the CD, generally (IV.10; XVI.1 ("upon the request of the Monitor, the State will provide the Monitor with access to data and reports"));
        ii. "Shall conduct the factual investigation and verification of data to determine compliance" (XVII.2);
        iii. Review the individual circumstances surrounding supported employment placements to ensure compliance (*see* V.E ("work from an individual's home as part of self-employment. . . is subject to review by the Monitor"));
        iv. The Employment First Task Force "will meet with the Monitor" and the Monitor will review materials from the Employment First Task Force (X.3.a);
        v. Hire staff and consultants (XVII.2);
        vi. Provide a written report to the Parties regarding the State's compliance every 180 days, may hold an informational and review meeting with the parties, parties may comment on the proposed report (XVII.3);
        vii. Interview individuals receiving services under the CD and access all relevant people, places and documents, including stakeholders, necessary for evaluating compliance (XVII.4-5, 6.c-d).

    b. May advise the Court:

*NOTE: All redline edits in this document – whether insertions, deletions, or formatting changes – reflect solely the United States' differences from the State's proposal.

      i. Have *ex parte* communications with the Court at any time (XVII.6.a);
     ii. Testify in the case regarding any matter relating to the implementation, enforcement, or dissolution of the CD, including the Monitor's observations, findings and recommendations (XVII.6.g);

  c. Will review and approve State actions:
      i. The Monitor and Parties "shall create a process that governs the variance process" (V.M);
     ii. Review and approve requests for Trial Work Experience exemptions (V.N) ("Exemptions from trial work experiences will be subject to the Monitor's approval");
    iii. Review and approve training materials (IX.4);
    iv. Review and approve outreach, in-reach, and education program materials (X.1);
     v. Approve transition incentives created by the State (XI.4);
    vi. Receive reimbursement from the State for all reasonable expenses incurred in the course of the performance of the Monitor's duties; except that the budget of the Monitor will not exceed $300,000 without approval of the State or the Court (XVII.9.a-b).
   vii. Within 10 business days of appointment, the Monitor will submit to the Parties for approval a proposed six month budget. The Monitor will then submit a proposed budget for the following year, and submit proposed budgets annually thereafter. XVII.9.c.
   viii. The Parties will raise with the Monitor any objections to the proposed budget within ten days of its receipt. The Parties and the Monitor will work to resolve any objections within ten days of an objection being raised. If the objection cannot be resolved, a Party may thereafter file the objection with the Court. XVII.9.d.
    ix. The Monitor may submit to the Parties for joint approval a proposed revision to the approved budget, along with any explanation of the reason for the proposal (XVII.9.e).

  d. May make Recommendations or provide Technical Assistance to the State:
      i. Provide guidance and suggestions in the formulation of the competency-based and value-based training program (IX.4);
     ii. Discuss with the State areas of concern and suggest technical assistance if appropriate (XVII.6.b);
    iii. Recommend actions necessary to remedy capacity issues (XI.11);
    iv. Offer guidance and suggestions to the State regarding any issue related to compliance (XXVII.6.e);

  e. May attempt to resolve disputes between the Parties related to construction or

*NOTE: All redline edits in this document – whether insertions, deletions, or formatting changes – reflect solely the United States' differences from the State's proposal.

      implementation of the CD (XVII.6.f).

**II.**    **Parties' Preferences for the Court Monitor's Role: Scope of Work.**

   a. In alignment with the general duties and responsibilities as described under the Consent Decree, the Parties request that the Court Monitor:
   i. Serve the Court by providing reports on the State's progress in meeting the requirements of the Consent Decree. These reports should be clear, factual, concise, brief, and informed by data and evidence. As appropriate, the Court Monitor will list the source of data and evidence (e.g., State reports, provider documents, etc.).
   ii. Report to the Court requirements of the Consent Decree that the State is not meeting, with relevant supporting information.
   iii. Report to the Court changes to relevant facts. For example, in the event the number of Target Population members is lower than the number of Target Population members required to be placed in integrated employment, the Court Monitor will report this information to the Court ~~and provide recommendations to or seek advice from the Court on how to evaluate the State's compliance in light of the changed facts~~.
   iv. Recommend to (or seek advice from) the Court on how the authority of the Court may assist the State in meeting the requirements of the Consent Decree.

   b. Tasks and Deliverables
   i. Reporting and Compliance
      1. The Court Monitor is required to produce two reports per year to inform the State on progress on compliance with the Consent Decree. The State recommends that the Court Monitor, State, and United States agree on a useful format and that the reports include a summary that:
         i. Lists the key findings;
         ii. Does not exceed 10 pages in length;
         iii. Is concise, organized and understandable for all levels of expertise and interest in the report, including the Court and the public.
      2. The parties and Court Monitor will agree upon the dates of the Court Monitor's semi-annual reports. The Parties agree that the reports should be filed with the Court on the docket.
      3. The <ins>Consent Decree requires that the</ins> Court Monitor shall provide the Parties a draft of his/her report, as referenced above and in section XVII.3 of the Consent Decree no less than 7 days before issuing the report. The Parties shall have the opportunity to review and comment on the proposed report, XVII.3, and may provide additional or contrary information for the Court Monitor's consideration at that time. The Parties may agree to allow the Monitor an additional 5 days to finalize a report after he/she receives comments from the Parties. XVII.3.

*NOTE: All redline edits in this document – whether insertions, deletions, or formatting changes – reflect solely the United States' differences from the State's proposal.

ii. The Court Monitor will gather the information needed to evaluate the State's performance for a Court Monitor report and may include quantitative information (e.g., numerical data) and qualitative information (e.g., individual experiences gathered from interviews). The Monitor will use methods and evidence typically relied upon by monitors and experts in the IDD field.

iii. The Parties will have an opportunity to review the Monitor's draft report, XVII.3, including any qualitative evidence as described above. At that time, either Party may provide meaningful comments/data to address qualitative data used by the Monitor in the draft report evaluating the State's performance.

iv. The Monitor will confer periodically with the Parties and/or the Court to ensure that the Monitor's report meets the criteria of the Consent Decree.

v. The Court Monitor will provide feedback to the Defendants on any reports submitted to the Monitor for the purpose of compliance no more than 30 days after they are submitted to the Court Monitor by the Defendants. The Defendants may provide further information/data to the Court Monitor based on the Monitor's feedback.

vi. The Court Monitor will provide the State with feedback whether the Court Monitor believes the State is or is not in substantial compliance with Consent Decree provisions and goals. The Court Monitor may provide recommendations to the State regarding ways to achieve compliance, including compliance in the face of changed facts, for example if the size of the Target Population falls below the size of an employment placement benchmark.

vii. As reasonably practical, the Monitor will limit requests for data and information related only to the requirements in the Consent Decree and Interim Settlement Agreement.

viii. As reasonably practical, the Monitor, on a Bi-monthly basis, will outline to the Parties the requirements in the Consent Decree which the Monitor intends to review in the following 2- month period which may or may not include requests for data or other information.

ix. When full compliance is reached on any requirement, it shall be noted by the Monitor to the Parties and the Court and, if the Parties and Court agree, will not require further review unless formally requested by one of the Parties or the Court.

c. Mediation and Problem Solving
i. The Court Monitor may mediate between the parties to solve problems and mitigate conflicting interest between DOJ, State, Court and community to facilitate agreement or compromise if possible.
ii. The Court Monitor may utilize their experience and expertise to identify any barriers to compliance and make recommendations to the parties.
 1. The following Consent Decree provisions do not require the State to take the actions recommended by the Court Monitor unless otherwise required by the Consent Decree:
   a. Guidance and suggestions in the formulation of the competency-based and value-based training program (IX.4);
   b. Actions necessary to remedy capacity issues (XI.11);

5

      c. Discussion of areas of concern and technical assistance if appropriate (XVII.6.b);
      d. Suggestions to the State regarding any issue related to compliance (XVII.6.e);
  2. Any assistance provided by the Monitor pursuant to the provisions listed in this document at II.c.ii shall be considered a recommendation and not a requirement to achieving compliance, unless otherwise required by the Consent Decree.

  iii. At Defendants' request, the Court Monitor will make reasonable efforts to be available to provide technical assistance, guidance, and suggestions (XVII.6.b; XVII.6.e). Such technical assistance, guidance, and suggestions may include recommendations to facilitate compliance; and identifying any obstacles to compliance and strategies to address such obstacles.

d. Stakeholder Engagement
  i. The Court Monitor will meet with and receive feedback from the Employment First Task Force, as required by Section X.3.a. The Court Monitor may provide feedback to the Employment First Task Force to facilitate its work pursuant to the Consent Decree.
  ii. The Court Monitor may interact with members of the community to inform compliance. To the extent that the Monitor will invoice the State for the time spent with the community, the Court Monitor will include with the invoice a written description of the engagement.

e. Contract Responsibilities
  i. Quarterly, the State, United States, and the Court Monitor will discuss the Court Monitor's budget expenses to address any proposed revisions to the approved annual budget. *See* Section XVII.9.e. As required by the Consent Decree, the total annual budget cannot exceed $300,000 without approval of the State or the Court. XVII.9.b.
  ii. The Court Monitor will provide the state with monthly invoicing for work related to Consent Decree compliance.
  iii. The Court Monitor will provide monthly summaries along with the invoice, that describes the activities the Court Monitor engaged in to assess State compliance.

*NOTE: All redline edits in this document – whether insertions, deletions, or formatting changes – reflect solely the United States' differences from the State's proposal.