**Charge to Interim Court Monitor**

I. Conduct a **comprehensive review of current status of Consent Decree** with information gathered from all parties and stakeholders for the purpose of (a) informing a collective view of current status; (b) identifying obstacles and barriers to full implementation of the consent decree by 2024; (c) identifying service gaps that might hinder full implementation; (d) identifying the structural components to be included in a plan for reaching substantial compliance by 2024; (e) define criteria for substantial compliance; and (f) identifying policies, activities and funding needed to achieve substantial compliance by 2024. The projected completion date for this comprehensive review is April 30, 2020.

Activities by Parties and/or Stakeholder Groups:

(a) Review of materials developed by Dr. Mosely;
(b) Requesting information directly from the Rhode Island Youth Transition Target Population (III, A, 3 and II, A, 14) through (i) survey or interviews with class members ages 18-22; (ii) survey or interviews with family members; (iii) survey or interviews with transition personnel in local education agencies; and (iv) and survey or interviews with administrator in local education agencies. Survey or interviews will focus on the services described in section VII and VIII of the consent decree;
(c) Requesting information directly from the Rhode Island Youth Exit Target Population (III, A, 4) through (i) survey or interviews with class members, (ii) survey or interviews with family members and (iii) survey or interviews with local education and provider agency personnel. Survey or interviews will focus on the services described in sections VII and VIII of the consent decree;
(d) Requesting information directly from the Rhode Island Sheltered Workshop Target Population (III, A, 1) through (i) survey or interviews with class members, (ii) survey or interviews with family members and (iii) surveys or interviews with provider agency personnel. Survey or interviews will focus on the services described in section V, VI and VII of the consent decree;
(e) Requesting information directly from the Rhode Island Day Target Population (III, A, 2) through (i) survey or interviews with class members, (ii) survey or interviews with family members and (iii) surveys or interviews with provider agency personnel. Survey or interviews will focus on the services described in section V, VI and VII of the consent decree;
(f) Requesting information from members of the Employment First Task Force through survey or interviews;
(g) Requesting information from the Rhode Island Department of Education through in-person interviews re: (a) status of each benchmark and requirement described in the consent decree, (b) projected plans for achieving remaining requirements and benchmarks, and (c) projected budget allocations needed to achieve those requirements and benchmarks;
(h) Requesting information from the Rhode Island Department of Behavioral Health Developmental Disabilities and Hospitals through in-person interviews re: (a) status of each benchmark and requirement described in the consent decree, (b) projected plans for

achieving remaining requirements and benchmarks, and (c) projected budget allocations needed to achieve those requirements and benchmarks;
(i) Requesting information from the Rhode Island Office of Employment Services through in-person interviews re: (a) status of each benchmark and requirement described in the consent decree, (b) projected plans for achieving remaining requirements and benchmarks, and (c) projected budget allocations needed to achieve those requirements and benchmarks;
(j) Requesting information from other pertinent Rhode Island State Agencies through in-person interviews re: (a) any projected plans that may assist with achieving compliance with consent decree requirements and benchmarks, and (b) projected budget allocations needed to fund those initiatives;
(k) Requesting information from any interested legislators re: consent decree policies and funding through interviews;
(l) Requesting from the general public through at least two public sessions.

II. Conduct a series of meetings with representatives from the U.S. Department of Justice, the State Parties and Stakeholder Groups represented on the Employment First Task Force to (a) propose the structural components to be included in a plan for reaching substantial compliance by 2024; (b) define criteria for measuring substantial compliance; (c) identify obstacles and barriers and service gaps which might impede achieving substantial compliance, (d) propose potential remedies for addressing those barriers and service gaps; and (e) identify policy revisions or additions, programmatic activities and funding needed to achieve substantial compliance by 2024. Development of this plan will be completed by August 30, 2020.