**Interim Settlement Agreement Review**
**February, 2020**
**A. Anthony Antosh, Interim Court Monitor**

**I.      Focus and Critical Question:**

The focus of this review is (a) individuals in the ISA target population who were listed on a document provided by the state parties as "not employed"; (b) individuals in the ISA target population who were listed on a document provided by the state parties as "employer paid, currently not employed"; and (c) a randomly selected sample of individuals in the ISA target population who were listed on a document provided by the state parties as "provider paid".

Review will focus exclusively on those benchmarks identified by the former Court Monitor (Dr. Mosely) and reiterated in the State Parties' memorandum as "not in compliance" or "to be determined".

The critical question is the definition of substantial compliance. The State's position is that Substantial Compliance under Section XIX(3) is met when the State has "implemented all of the provisions of the ISA for all individuals in the target populations." In this context, "implement" means that there are mechanisms and/or policies put into effect of sufficient means to carry out its requirements of the particular benchmark at issue. In other words, the State's protocol for each remaining benchmark reaches an acceptable level of competence to fulfill any numerical requirement, **whether that numerical requirement is or is not reached, as long as the protocol is such that the Court is satisfied that the State is on track to reasonably reach the requirement".** Stated differently, the question is whether providing the service is enough even if the outcome has not been achieved? The State provided "reasons" why fifteen individuals have not been employed

Discussions with the Department of Justice have emphasized that, although the services and supports described in the Interim Settlement Agreement are comparable to those in the Consent Decree, the target population for the ISA is comprised of a small group of **unique individuals** who were expected to receive the benefits earlier (2020) than the larger consent decree populations (2024).

Thus, the Interim Court Monitor reached these conclusions.
(1) Because the ISA population is so small and so focused, the question of substantial compliance is about **whether each and every individual has received sufficient** supported employment services as defined in V(A)(1); supported employment placements as defined in IV(9)(A-E) and in V(D)(E)(I); integrated days services (as defined in VI(A-B); career development planning as defined in (VII); and funding as defined in XIV(1).
(2) The ISA also charges the State Parties VII(5)(C) and XVI(3)(A) to "**identify problems or barriers** to placement in or retaining jobs in individual, integrated employment settings". The "reasons" identified by the State in their memorandum and in the

       individual narratives provided to the monitor begin to address that charge. XI(9) authorizes the monitor to make recommendations for addressing gaps and obstacles.
- (3) The Monitor has observed and/or discussed 32 individuals (as described above), has reviewed their Individual Service Plans/Career Development Plans, and has met with key support staff (and some family members) re: **whether each individual has received sufficient services and supports** as described above.  Based on those reviews, the Interim Court Monitor is recommending services and supports (aligned with the ISA sections listed above) that will increase the likelihood of achieving the outcomes of the ISA for the individuals observed.  The monitor believes that, if these recommended services and supports are embedded into each individual's Individual Service Plans/Career Development Plans and implemented in a timely manner, the State will have achieved substantial compliance with both the spirit and letter of the ISA.
- (4) The ultimate metric for measuring substantial compliance is whether the lives of the target population members have demonstrated positive change.  Change is a composite of employment and integrated daily activity.

The following sections will address:
- (1) General impressions concerning the obstacles, barriers and service gaps encountered by the individuals observed;
- (2) Specific comments and recommendations for individuals described by the State as "not employed";
- (3) Specific comments and recommendations for individuals described by the State as "employer paid, currently not employed";
- (4) Specific comments and recommendations for individuals described by the State as "employer paid";
- (5) Review of items listed in the State's memorandum as Not in Compliance and/or To Be Determined;
- (6) Other Recommendations and Questions.


**II.**     **General Impressions of Obstacles, Barriers, Service Gaps.**

These impressions were derived from the observations made during the ISA review.  However, the Interim Court Monitor anticipates that these same obstacles, barriers and service gaps are also true of the Consent Decree target populations.  These are systems issues that need to be addressed to achieve the intents of the Consent Decree and the ISA.

Many textbooks describe "**limited experience**" as one of the most common characteristics associated with individuals who have an intellectual disability.  Several studies have documented that experience is the basis of choice-making.  Simply said, people do not choose what they do not know about.  Thus, the expression of preferences associated with Person-Centered Planning does not happen unless each individual has sufficient number of experiences of sufficient duration.  This is the rationale for **job discovery, work trials** et al V(A)(D)(E).  Every individual observed was asked "if there was anything they would like to try", "if they had any other interests", "what jobs relatives or friends had" or similar questions.  Of the individuals listed by the State as "not employed", or "employer paid, currently not employed", most could not answer

or described only what they currently did (both for employment and integrated day).  Thus, discovery needs to be better organized and more systematic.  Funding to facilitate the discovery process needs to be identified.

Discovery and placement are, at least partially, connected to the system's effort at **employer outreach**.  The majority of work trials and placements were in chain stores.  There was less involvement with small business.  Outreach to a wider breadth of employers needs to increase.  Similarly, the jobs of those individuals who were "employer paid" fell into **categories of employment traditionally associated with individuals who have intellectual disabilities**.  There needs to be more creativity about work trials and placements.

"The remainder of all time set forth in an individual's ISP in a forty hour work week in which such individuals are not in school or supported employment" are to be spent in **integrated day services** VI(B).  No one observed could be described as meeting this benchmark.  The Interim Court Monitor fully understands the limitations of the Tier system and state budget allocations.  Thus, community mapping to identify generic services, supports and opportunities and a greater focus on developing integrated supports needs to continue to be an emphasis in all training and technical assistance activities……and in individual budget allocations.

In its memorandum the State lists "**family resistance**" as a reason why some individuals had never been or were currently not employed.  The Interim Monitor identified this issue in nine individuals.  Research has documented that direct family-to-family interaction is an effective strategy for addressing this issue.  The Interim Monitor asked families directly what would increase their willingness to try employment.  Issues of security and safety, consistency of staff were raised.  All were open to hearing from other families.  Although the Family Employment Awareness Training is a good start, the Interim Monitor recommends that ISA families that have been resistant to employment receive **direct outreach from other families** whose family members have been successfully employed.

In its memorandum the State lists "a significant barrier due to stabilizing health and barriers" as another reason.  Several of the individuals not employed or not currently employed had significant support needs due to a variety of **factors in addition to intellectual disability that impede access to employment and integrated day activities**.  Although every provided demonstrated strong commitment to these individuals, there was/is limited expertise re: strategies to address these issues.  Needs identified by the Interim Monitor include:
- 13 of the individuals observed demonstrated **limited communication** – there is need for increased technical assistance re: (a) strategies for developing and increasing communication and (b) use of technology to augment communication;
- 4 of the individuals observed demonstrated **limited mobility**, at least partially resulting from wheelchair and/or other seating and/or mobility supports that did not match the individual's physical needs – there is need for increased technical assistance re: (a) appropriate wheelchair and seating design, (b) acquisition and use of adaptive devices and (c) strategies/exercises for increasing mobility;
- Two individuals would profit from additional training and technical assistance re: **orientation and mobility**;

- A small number of individuals demonstrated behaviors that limited access to employment. None reported receiving technical assistance re: **design of positive behavioral support strategies**.

There was **no demonstrated use of technology** as a strategy for increasing access to employment or integrated day activities. Several individuals demonstrated interest and use of tablets – there needs to be expansion of access to (which includes facilitating funding) and use of technology for employment or integrated day activities.

Support staff (and provider organizations) referenced funding issues including limitations on how funding could be used. The overall funding system needs to be reviewed to allow for (a) **increased braiding and blending of funding** and (b) **increased flexibility in use of funding**.

### III.     Summary of Current Data from ISA Tracker and Sherlock Survey

Data from two reports will be used to track changes in several factors connected to the Interim Settlement Agreement. The State "Consent Decree Quarterly Data Report" provides current data collected from several sources. The "Sherlock Employment and Day Activity Survey" provides data on a range of variables pertinent to employment and integrated day activity. The Sherlock survey is a "point in time" survey collected in March (complete survey) and in September (partial survey). The partial survey collected in September focuses only on current status, supported employment service and community (i.e. integrated day) activity. The most recent State Report is dated January 31, 2020. The most recent Sherlock Survey Report is dated December, 2019. These most recent reports will be used as baseline information against which change will be measured.

|  | **State Report** | **Sherlock Survey** |
|---|---|---|
| Number Employed | 72* | 31** |
| *State reports cumulative number of individuals who have had placements in integrated employment.*<br>*\*\*Sherlock Survey reports number in individual employment.*<br>*Note – Number of people employed varies during reporting periods. Current ISA tracker (1/9/20) reports 42 individuals as employer paid.* |  |  |
| Number Inactive or Retired | 8 | 9 |
| Percent with Career Development Plans | 100% |  |
| Average Weekly Hours Worked | Birch 14<br>TTP 13 |  |
| Average Hourly Wage | Birch $11.33<br>TTP $11.17 |  |
| Number Receiving Supported Employment Services |  | 55 |
| Number Reporting Career Planning During Past Quarter |  | 4 |
| Number and Average Weekly Hours |  | 1.3 hours |

| | | |
|---|---|---|
| Number in Post-Secondary Education During Past Quarter Number and Average Weekly Hours | | 3 1.3 hours |
| Number with Short Term Experience During Past Quarter Number and Average Weekly Hours | | 0 |
| Number with Long Term Experience During Past Quarter Number and Average Weekly Hours | | 1 1 hour |
| Job Search with Individual During Past Quarter Number and Average Weekly Hours | | 6 1.2 hours |
| Job Search on Behalf of Individual During Past Quarter Number and Average Weekly Hours | | 3 1 hour |
| Number Receiving Job Coaching/Retention During Past Quarter - Number and Average Weekly Hours | | 25 4.3 hours |
| Community Non-Work Activity During Past Quarter Number and Average Weekly Hours | | 51 14.6 hours |
| Soft Employment Skills During Past Quarter Number and Average Weekly Hours | | 12 3.3 hours |
| Arts and Leisure Activity During Past Quarter Number and Average Weekly Hours | | 45 5.7 hours |
| Health and Fitness Activity During Past Quarter Number and Average Weekly Hours | | 39 5.8 hours |
| Activities of Daily Living During Past Quarter Number and Average Weekly Hours | | 11 5.7 hours |
| Volunteering During Past Quarter Number and Average Weekly Hours | | 12 2.4 hours |
| Adult Education During Past Quarter Number and Average Weekly Hours | | 14 3.2 hours |
| Other Community Activity During Past Quarter Number and Average Weekly Hours | | 25 3.2 hours |

**IV.    Specific Comments and Recommendations for Individuals Described by the State as "Not Employed"**

Interim Monitor was able to meet with 11 of the individuals described by the state as "not employed" and met with staff or families about four others. Two individuals were described as currently not receiving service. No contact was made with another individual directly supported by FedCap.

The following chart summarizes my observations for the 15 individuals observed/discussed.

| | |
|---|---|
| Individuals with families resistant to employment | 6 |
| Individuals needing communication instruction and/or technology | 11 |
| Individuals needing adaptive devices, better wheelchairs and/or seating, consultation from physical or occupational therapists | 2 |
| Individuals needing training in orientation and mobility | 2 |
| Individuals needing consultation re: behavioral supports | 3 |

| | |
|---|---|
| Individuals needing technology for exploration of career and integrated day activities | 6 |
| Individuals employed | 2 |
| Individuals not employed | 13 |
| Individuals unable to express job or career interests | 11 |
| Individuals with limited career exploration | 11 |
| Individuals with active integrated day activities | 4 |
| Individuals with minimal or limited integrated day activities | 10 |
| Individuals unable to express interests/preferences for integrated day activities | 9 |
| Individuals considered by the Monitor to be employable within one year | 10 |
| Individuals considered by the Monitor to be employable within two years | 2 |

The Monitor reviewed Career Development Plans and Individual Service Plans for these individuals.  Only **one plan** was found to have clear goals for integrated employment and integrated day activity, defined action steps and sufficient detail to facilitate implementation.  Most goals were general statements such as "will learn about" or "will explore".  Goals (especially for integrated day activities) were limited by the form used.

Based on these reviews, the Interim Monitor makes the following recommendations for the services and supports needed for identified individuals……in order for the state to be in substantial compliance.

- Address issues of family resistance and/or hesitation through direct intervention from another family whose family member is successful in employment and integrated community day.
- Complete an environmental scan of employers within a defined radius around each "not employed" individual's residence.  Outreach to employers to identify (a) the functions in their business for which they have most difficulty finding someone and (b) available openings.  Describe requirements for those jobs.  Develop agreements with these businesses for community-based work evaluations and/or work trials.
- Provide funding for two community-based work evaluations and/or work trials and for job development for each "not employed" individual.  Match individuals with the opportunities, functions and requirement identified through the environmental scan.
- Provide consultations from a communication professional with expertise in augmentative communication to all individuals with limited communication and/or communication issues.
- Provide technical assistance from a professional with expertise in technology to **all** individuals who need to acquire and use technology to increase opportunities for employment and integrated activities.
- Provide consultation from physical/occupational therapists for those individuals for whom adaptive seating, better designed wheelchairs and other positioning strategies.
- Provide instruction in orientation and mobility to individuals with vision impairments for whom mobility limits access to employment and integrated day activities.

- Provide technical assistance to agencies that support ISA members who have expertise with individuals who have significant support needs.
- Monitor also has additional recommendations for some individuals.

## V. Specific Comments and Recommendations for Individuals Described by the State as "Employer Paid, Currently Not Employed"

Interim Monitor was able to meet with 6 of the individuals described by the state as "employer paid, currently not employed" and met with staff or families about 3 others. The mother of another individual requested that he not be involved in this review.

The following chart summarizes my observations for the 9 individuals observed/discussed.

| | |
|---|---|
| Individuals with families resistant to employment | 3 |
| Individuals needing communication instruction and/or technology | 2 |
| Individuals needing adaptive devices, better wheelchairs and/or seating, consultation from physical or occupational therapists | 2 |
| Individuals needing consultation re: behavioral supports | 1 |
| Individuals needing technology for exploration of career and integrated day activities | 3 All |
| Individuals employed | 0 7 want to work |
| Individuals not employed | 9 |
| Individuals unable to express job or career interests | 7 |
| Individuals with limited career exploration | 3 |
| Individuals with active integrated day activities | 4 |
| Individuals with minimal or limited integrated day activities | 5 |
| Individuals unable to express interests/preferences for integrated day activities | 5 |
| Individuals considered by the Monitor to be employable within one year | 9 |

The Monitor reviewed Career Development Plans and Individual Service Plans for these individuals. **Four plans** were found to have clear goals for integrated employment and **five plans** had clear goals for integrated day activity, defined action steps and sufficient detail to facilitate implementation. As with the "not employed individuals" most of the other goals were general statements such as "will learn about" or "will explore". Goals (especially for integrated day activities) were limited by the form used.

Based on these reviews, the Interim Monitor makes the following recommendations for the services and supports needed for identified individuals……in order for the state to be in substantial compliance.
- Address issues of family resistance and/or hesitation through direct intervention from another family whose family member is successful in employment and integrated community day.

- Complete an environmental scan of employers within a defined radius around each "not employed" individual's residence.  Outreach to employers to identify (a) the functions in their business for which they have most difficulty finding someone and (b) available openings.  Describe requirements for those jobs.  Develop agreements with these businesses for community-based work evaluations and/or work trials.
- Provide funding for at least one community-based work evaluations and/or work trials and for job development for each "not employed" individual.  Match individuals with the opportunities, functions and requirement identified through the environmental scan.
- Provide consultations from a communication professional with expertise in augmentative communication to all individuals with limited communication and/or communication issues.
- Provide technical assistance from a professional with expertise in technology to **all** individuals who need to acquire and use technology to increase opportunities for employment and integrated activities.
- Provide consultation from physical/occupational therapists for those individuals for whom adaptive seating, better designed wheelchairs and other positioning strategies.
- Provide instruction in orientation and mobility to individuals with vision impairments for whom mobility limits access to employment and integrated day activities.
- Provide technical assistance to agencies that support ISA members who have expertise with individuals who have significant support needs.
- Monitor also has additional recommendations for some individuals.

## VI.   Specific Comments and Recommendations for Individuals Described by the State as "employer paid"

Interim Monitor was able to meet with 8 randomly selected individuals described by the state as "employer paid".

The following chart summarizes my observations for the 8 individuals observed/discussed.

| | |
|---|---|
| Individuals with families resistant to employment | 0 |
| Individuals needing communication instruction and/or technology | 0 |
| Individuals needing adaptive devices, better wheelchairs and/or seating, consultation from physical or occupational therapists | 0 |
| Individuals needing training in orientation and mobility | 0 |
| Individuals needing consultation re: behavioral supports | 0 |
| Individuals needing technology for exploration of career and integrated day activities | 4 All |
| Individuals employed | 8 |
| Individuals not employed | 0 |
| Individuals unable to express job or career interests | 3 |
| Individuals with limited career exploration | 0 |
| Individuals with active integrated day activities | 6 |
| Individuals with minimal or limited integrated day activities | 2 |

| | |
|---|---|
| Individuals unable to express interests/preferences for integrated day activities | 3 |

The Monitor reviewed Career Development Plans and Individual Service Plans for these individuals.  **All eight plans** were found to have clear goals for integrated employment (five for increasing hours worked) and **four plans** had clear goals for integrated day activity, defined action steps and sufficient detail to facilitate implementation.  As with the reviews cited earlier, some of the goals (especially for integrated day activities) were limited by the form used.

Based on these reviews, the Interim Monitor makes the following recommendations for the services and supports needed for identified individuals……in order for the state to be in substantial compliance.
- Collaborate with providers to determine what supports might be needed to facilitate those individuals who wish to expand their hours.
- Provide technical assistance from a professional with expertise in technology to **all** individuals who need to acquire and use technology to increase opportunities for employment and integrated activities.
- Many of the "employer paid" individuals receive limited "community support".  Provide technical assistance to providers to facilitate in depth community mapping of integrated day activities and generic community resources and to facilitate increased participation in a broader variety of integrated day activities of the person's choosing.

### VII. Summary of Substantial Compliance for items listed in the State's memorandum as Not in Compliance and/or To Be Determined

The individuals observed by the monitor could be grouped into two categories.  The individuals described by the state as "employer paid" have jobs and an array of individual day activity in integrated settings.  The majority of those who are "not employed" or "not currently employed" do not.  Thus, the monitor's assessment of substantial compliance is different for these two groups.  "X" indicates the areas for which the monitor believes substantial compliance has been reached and/or areas that should be integrated into monitoring of the broader consent decree.

| Benchmark | Status for Individuals Listed as "Employer Paid" | Status for Individuals Not Employed |
|---|---|---|
| Outcomes IV(9)(a)-(e) Outcomes IV(1)(7)(8) | X | As indicated, approximately 26 individuals are not currently employed |
| Integrated Day VI(2)(b) Integrated Day VI(B) | Many individuals were observed by the monitor to have active community lives aligned with the extent to which they receive community support hours. Monitor's recommendations include an increased focus on community mapping to expand integrated day activity. | Many of these individuals do not have extensive community involvement. Monitor's recommendations address the various co-occurring needs that will increase access to both employment and integrated day activity. |

Case 1:14-cv-00175-JJM-PAS   Document 101   Filed 02/07/20   Page 10 of 11 PageID #: 3352

10

| | | |
|---|---|---|
| Career Development Planning VII(5) CDP VII(2)(4)(6)(7) | X All individuals have career development plans. Several individuals wished to increase their work hours. Although the monitor believes there is substantial compliance for this group, efforts should be made to assist those individuals in increasing hours and/or in exploring other areas of interest. | Per the monitor's observations, only five of twenty-four plans reviewed had clearly stated goals, action steps and sufficient implementation details. There was also an observed need to expand the number of community-based work experiences and job trials for these individuals. Monitor's recommendations focused on these issues. |
| Transition Planning for Youth VIII(3)(4)(8) | There were no transition-aged youth in this review. Review of such activities will be integrated with the broader monitoring of the Consent Decree. | There were no transition-aged youth in this review. Review of such activities will be integrated with the broader monitoring of the Consent Decree. |
| Training IX(2) | X During the review process, staff were asked about the training they had received. With few exceptions, all had completed full ACRE certification, the ACRE-based job coaching and retention certificate or other pertinent training. | X During the review process, staff were asked about the training they had received. With few exceptions, all had completed full ACRE certification, the ACRE-based job coaching and retention certificate or other pertinent training. |
| Outreach, Education, Support X(2) | X | Monitor's recommendations included family-to-family discussions, particularly for families who were hesitant about employment. |
| Provider Capacity XI(3-8) | X | Monitor's recommendations included several activities intended to increase provider capacity to support individuals who have significant support needs. |
| Quality Improvement XV(1-2) | X Review of Quality Improvement activities will be integrated with the broader monitoring of the Consent Decree. | X Review of Quality Improvement activities will be integrated with the broader monitoring of the Consent Decree. |
| Data Collection and Reporting XVI(1-3) | X | X Monitor recommends increased focus on developing solutions for the service gaps, barriers and obstacles identified. |

## VIII. Other Recommendations

Meld ISA and Consent Decree monitoring while continuing to track the ISA target population as an unique group. Track pertinent data on ISA target population members as unique population through December, 2020. This to be followed through one year of "probation" through December, 2021.

Criteria for substantial compliance:
- Implementation of recommended (per above) services and supports for ISA target populations – (a) embedded in ISPs and CDPs and (b) documented through monitor visits and review of ISPs and CDPs in May and November;
- Positive change in overall community-based activities (i.e., combination of employment related activity and integrated day activities) for at least 80% of the individuals currently identified as "not employed" or "provider paid, currently not employed". Positive change is defined as growth over baseline observations.
- Metrics for positive change for the individuals currently identified as "not employed" or "provider paid, currently not employed" – (a) increase in documented discovery experiences, (b) increase in community-based work evaluations and/or work trials, (c) decrease in "reasons" and obstacles/barriers as described in the State's memorandum and in the individual narratives provided to the monitor, (d) increase in total time spent in integrated settings (combination of employment and integrated day activities), (e) documentation of blended funding (BHDDH, ORS, other) to support increased activity;
- Data Sources – (a) ISA tracker and (b) Sherlock Survey. Most recent versions of both will serve as baseline. Data reported in May, 2020 and November, 2020 will document change.

## IX. Other Questions

There have been gaps in service for two people, one was dropped from the waiver (not yet returned), another was reported to not be receiving service for medical reasons. Re-open any individual who was dropped from service or who has experienced a gap in service. Insure that all ISA target population members are active.

Provide the names and reasons for being "closed" for the individuals on the de-identified list (provided to the monitor in early December) who were not included in the list of 82 names.

Provide a list of all the Project Search(es) and outcome data – how many were employed.

Define the relationship with three individuals (in the ISA population) who self-direct.

Define how communication occurs with Spanish-speaking families.