In response to the July 2020 Court Order from Judge McConnell the Department of Behavioral Healthcare, Developmental Disabilities and Hospitals (BHDDH) put together five initial short-term workgroups to address timelines and discuss best strategies for approaching the work that needs to be done on the sixteen issues outlined in the Court Order.  A call was put out to request a diverse group of stakeholders to meet for a two-week period on the categories below (Eligibility, Appeals, Contracts, Fiscal Concerns, and Individual Budgets).   The workgroups met once a week for 2 hours and were compromised of individuals in the adult service system, family members, advocates, and providers.  The workgroups were tasked with providing clarity and context to the sixteen issues.  This was done in these smaller workgroups to provide enough time for discussion and delineation of clear and realistic timelines for moving this work forward.  So far, we have worked on the broad issues.  The next phase of the workgroup will on the details of the strategies that have been identified.  Updates will be provided in subsequent reports.

In the next phase of this work BHDDH will bring together larger, long-term workgroups for each of the categories below, including some of the stakeholders who participated in the initial meetings as well as new individuals.  Participants will be focused on finding the most efficient and effective solutions to address the issues presented by the Court.  Having stakeholders work with the State to address these pressing concerns will help to ensure that the solutions coming out of these workgroups directly address the system complexities that individuals, families, and providers have to deal with on a daily basis.  While the perspectives of all stakeholders will be reflected, the overarching goal is focused on ensuring an easy to use, flexible, and responsive system of supports driven by the individuals served.

## Information from Workgroups

### Workgroup:  Eligibility

Overview:  The intent of this workgroup will be to streamline processes.

- Wherever possible, there should be less paperwork, and that paperwork needs to be submitted fewer times.
- Determine how the different Departments can consolidate the need for documents/requests for paperwork.
- Provide clearer and more user-friendly communications about service options across the service system(s) so individuals and families are able to make informed decisions about what options best meet their needs.

Court-identified items and stakeholder-provided input:

Item # 1: The process for determining the support needs of each individual found eligible for services through RI DDD.
   a. Barriers: difficulties with the SIS process, lack of cultural competency of public and private staff, inconsistent access to case management for self-directing consumers.
   b. What needs to happen to address the identified barriers: develop new model for determining support needs that includes SIS, needs identified by each person and other variables.  Provide funding for plan development and case management to help families identify needs.  Train

        DDD caseworkers and plan facilitators to ensure consistency.  These are policy changes only needing Division approval.
- c. Timeline for developing solutions – March 2021
- d. Once the system is changed, the process for determining support needs for each individual and for developing ISPs can be fully transformed by – December 2021
- e. Agency with primary responsibility – BHDDH

Item # 3: The need to consolidate the application (by individuals) for all pertinent services into one process.  This includes outreach and communication to families, simplifying language on all forms and directions, shortening timelines for various stages of application and eligibility, and melding the various eligibility processes (e.g., Medicaid eligibility and DD eligibility) into one process.

- a. Barriers:  requirements to produce the same document multiple times, lack of Spanish-speaking staff (particularly state SCWs), lack of data on non-English speaking families, lack of access to services for non-citizen immigrants/undocumented people, inconsistency in distribution of communication.
- b. What needs to happen to address the identified barriers:  establish a database so that personal information can be retrieved without requiring consumers to reproduce it.  Provide person- centered options counselling to assist in the transition process.  Implement the LTSS "no wrong door" process to assist in simplifying the application process.  Ensure all documents are language accessible.  These are technical changes that will require interagency collaboration.
- c. Timeline for developing solutions – March 2021.
- d. Once recommendations have been made, it will take another full year to implement across all the pertinent state agencies – April 2022.
- e. Agency with primary responsibility – EOHHS.

Item # 4:  The need for eligible individual to redetermine eligibility more than once.

- a. Barriers:  the process requires significant paperwork and redundant data collection, consumers are frustrated and traumatized at repeating their stories.
- b. What needs to happen to address the identified barriers:  determine if a waiver can be approved to simplify the CMS requirement for redeterminations if there have not been any life changing events.  The state needs to explore the possibility of a waiver or SPA to simplify the process.  These changes will require interagency and federal collaboration.
- c. Request will be made to CMS – December 2020.
- d. Implementation will be made upon approval from CMS – December 2021 (anticipated).
- e. Agency with primary responsibility -- EOHHS.

**Workgroup:  Appeals**

Overview:  The intent of this workgroup will be to streamline the various appeals processes.

- The process and timeline for appeals should be clearly described and easily found.
- Communications coming out of an appeal is documented in a manner that is user friendly to individuals, families and providers.

Court-identified items and stakeholder-provided input:

Item # 13:  The L9 process for requesting additional funding.

Item # 14:  The S109 process for appealing funding decisions.

a. Barriers:  supplemental funding processes require burdensome "additional steps;" the process can be incomprehensible, slow and lacks a contact person to assist the consumer; communication that the process exists is inconsistent.
b. What needs to happen to address the identified barriers:  identify where the best places are to invest in the system (what are other states doing?), simplify and condense forms, streamline processes by eliminating unnecessary steps.  The ultimate goal, as changes are made to the SIS process, is that this process will not be needed unless there are significant life changing circumstances.  The complications with the process largely exist within BHDDH policies and procedures.
c. Timeline for developing solutions – December 2020.
d. Once solution is developed, implementation will occur within 3 months – March 2021.
e. Agency with primary responsibility -- BHDDH.

Item # 5: The appeals process for individuals as it relates to eligibility, level of need, of funding level.

a. Barriers:  the appeals process is not clearly defined in a manner that is accessible for consumers; there is significant delay between requesting and obtaining a hearing; decisions are not timely, tier appeals are complicated when more than one agency is involved; when the appealing party prevails and then changes providers, the new funding does not follow the consumer thus requiring another appeal (similar situation for supplemental funding and anniversary date of ISP); families do not know how to proceed from unresolved agency grievance to state appeal.
b. What needs to happen to address the identified barriers:  the appeal process needs to be clarified, streamlined, communicated in accessible formats.  Consumers, families, advocates and providers need training and support on the existence of the process as well as how to navigate the process.  The barriers are related to BHDDH policies and procedures.
c. Timeline for developing solutions – December 2020.
d. Once solution is developed, implementation will occur within 3 months -- March 2021.
e. Agency with primary responsibility -- BHDDH.

**Workgroup:  Contracts (***note:  Purchase Order + ISP = Equivalent of Contract between Provider and Consumer***).**

Overview:  The intent of this workgroup will be to evaluate how individuals engage with and contract for supports and services with provider agencies.

- Determine how this arrangement can be formalized in a truly person-centered and meaningful way with appropriate accountability for all parties.
- Address any service inequities.
- Develop a more self-determined process.

Court-identified items and stakeholder-provided input:

Item # 15:  The process and timeline by which individuals contract with provider organizations.

   a. Barriers:  process is complex and lack guidance documentation; allocation letter does not adequately explain benefit; consumers/families bear the burden of identifying support agency; lack of sufficient staff with required expertise; delayed timeline from eligibility to receiving services.
   b. What needs to happen to address the identified barriers:   Process needs to be simplified and timeline condensed.  A guidance document needs to be developed.  We need to clarify who in the system will provide support prior to agency involvement; summarize current process in order to identify specific areas in need of improvement/redesign; clarify services and financial benefits available to consumers across the system.  This process requires BHDDH, provider, consumer and advocation collaboration.
   c. Timeline for developing solutions – March 2021.
   d. Once the process is in place, implementation will take until December 2021.
   e. Agency with primary responsibility -- BHDDH.

Item # 16:  Provider contractual billing procedures.

   a. Barriers:  units and dollars do not align; it functions differently for families and providers; the "60/40" split does not incentivize person-centered planning, consumers/families do not understand the terminology, utilizes unnecessary amount of staff resources that could be dedicated to consumer support.
   b. What needs to happen to address the identified barriers:   first step is to understand the history of what emerged from "Project Sustainability" and how that diverted resources from consumer support to administrative processes.  Develop processes that are simplified, streamlined and clear to consumers and providers.  Address issues that do not incentivize the person-centered approach.
   c. Timeline for developing solutions – March 2021.
   d. Once the new procedures are in place, implementation will require one year as this will be a part of an entire fiscal system over hall – March 2022.
   e. Agency with primary responsibility – BHDDH.

**Workgroup:  Fiscal Concerns**

Overview: The intent of this workgroup will be to identify needed changes in the DD billing structure.

- Simplify all parties' ability to understand how funding is being utilized and when funding is being over- or under-utilized so individuals and families can make informed decisions about reallocating funds.
- Promote greater person-centeredness and flexibility within individuals' authorizations to provide the right level of support services at the right time.
- Decrease the administrative burden placed on providers to bill for services rendered.

Court-identified items and stakeholder-provided input:

Item # 6: Quarterly Authorizations

    a. Barriers:  interrupts services to consumers, tracking is time consuming and burdensome for providers, constitutes managing a budget rather than managing consumers' needs, counterintuitive to an individualized approach.
    b. What needs to happen to address the identified barriers:  there needs to be greater understanding on how to implement annual authorizations on the consumer level; extend knowledge with how the Medicaid system works; build the entire financial need (including current S109 process) into the annual authorization; provide oversight to ensure that funds are not depleted too early in the year; standardize terminology.  Implementation will require input from BHDDH fiscal, DoIT, DXC/Medicaid.
    c. Timeline for developing solutions – Programming for annual authorizations will be completed in October 2020.
    d. All ISPs will be impacted by the Oct programming through the end of the current approval date; all subsequent ISP developed after December 31 will be authorized for a full year.  Full implementation will occur at end of the next ISP cycle.
    e. Agency with primary responsibility – BHDDH.

Item # 7:  Ratios

    a. Barriers:  billing system is inflexible, consumer tier levels and group sizes do not address hours of service required to meet consumer needs, process for transferring unused funds to another service type is cumbersome, funding levels for services are unrealistic.
    b. What needs to happen to address the identified barriers:   develop simplified, less complex billing system that can be understood and accessed by consumers, families and providers; allow billing with codes that reflect actual service delivered; make accurate budget projections.  Resolution will include BHDDH, Medicaid and federal partners.
    c. Timeline for developing solutions – March 2021.
    d. Once the new procedures are in place, implementation will require one year as this will be a part of an entire fiscal system over hall – March 2022.
    e. Agency with primary responsibility – BHDDH.

Item # 8: Fifteen Minute Billing Units

    a. Barriers:  intensely burdensome administrative process to complete 15-minute information; DSPs, already a part of an unstable workforce, are donating personal time to accomplish this work in order to maintain service commitment to consumers.
    b. What needs to happen to address the identified barriers:   change billing system to a per diem of longer duration system; work with other groups on as part of workforce stabilization plan.  Resolution will include BHDDH, Medicaid and federal partners.
    c. Timeline for developing solutions – March 2021.
    d. Once the new procedures are in place, implementation will require one year as this will be a part of an entire fiscal system over hall – March 2022.
    e. Agency with primary responsibility – BHDDH.

**Workgroup:  Individual Budgets**

Overview:  The intent of this workgroup will be to bring more clarity to the process of preparing each individual's budget.  The desired outcome is that individuals have increased self-determination and control over the supports and services they receive.

- Information gathered during the workgroups identified a need for greater flexibility for individuals to determine what they want to spend their allotted authorization on.
- The system needs to be redesigned to have each individual's wants, needs, and choices determine the supports provided rather than have individuals conform to or settle for what the system offers.

Court-identified items and stakeholder-provided input:

Item # 2:  The process and timeline for developing annual individual budgets.

   a. Barriers:  process requires many S109s/S110s which translates into significant staff time; the timeline for consumers to obtain services is lengthy and funding is inadequate; consumers are not in control of their funds; tier levels do not meet consumer needs.
   b. What needs to happen to address the identified barriers: streamline the processes for how funds are initially allocated, how funds are enhanced after the budget has been approved, how funds are changed or reallocated and define the range of funding.  Resolution will include BHDDH DD and Fiscal teams and EOHHS.
   c. Timeline for developing solutions – March 2021.
   d. Individual budgets for each individual will be developed in the next ISP cycle, beginning in April 2021.
   e. Agency with primary responsibility – BHDDH.

Item # 9:  The need to develop a clearly defined list of functions and activities for which funding is allowable.  Definitions for each function or activity approved for funding and the rates connected to each.

   a. Barriers:  hybrid plans add costs but may be necessary to meet consumers' needs; functions, activities and time limitations for services are not clearly listed, identified or communicated to consumers, families and providers; provision of services lacks sufficient flexibility.
   b. What needs to happen to address the identified barriers:  a system needs to be developed that starts with consumer needs and lists all functions and activities for which funding is allowable from that vantage point.  We need to identify trends relative to consumer needs and ensure that unique needs can be met for individuals.
   c. Timeline for developing solutions – March 2021.
   d. This aligns with Item #2.  Anticipated timeline for full implementation – April 2021.
   e. Agency with primary responsibility – BHDDH.

Item # 10:  Th need to provide different funding levels for each function or activity that are responsive to individual support needs.

   a. Barriers:  funding provided often does not match the support required to meet desired outcomes; non-individualized funding levels may not match personal goals; funding does

       not always incentivize person-centered planning (e.g., 60/40 split for center-based programming).
- b. What needs to happen to address the identified barriers:  funding should be straight forward, i.e., perform a services and bill for it.  Set funding levels to meet consumer need to accomplish outcomes.  The current system is overly complex and needs revision to become directly responsive to the consumer.  This will require collaboration among BHDDH, Medicaid and federal partners.
- c. Timeline for developing solutions – March 2021.
- d. Anticipated timeline for full implementation of this part (not including the SIS changes)– April 2021.
- e. Agency with primary responsibility – BHDDH.

Item # 11:  The need for guidance concerning the flexibility permitted within each function or activity.

- a.  Barriers:  consumers and families are not receiving adequate guidance to understand the full range of what is available across the system, including how much and what can be altered.  The system lacks a defined full range of what guidance is needed, e.g., individual and family, service coordination, agency administration, etc.
- b. What needs to happen to address the identified barriers:   a defined model of conflict free case management needs to be developed and implemented.  This needs to be developed with the collaboration of BHDDH, Medicaid and federal partners.
- c. Timeline for developing solutions – March 2021.
- d. Anticipated timeline for full implementation – April 2021.
- e. Agency with primary responsibility – BHDDH.

Item # 12:  The need for guidance about combining of individual budgets, at the request of individuals.

- a.  Barriers:  there is a lack of understanding and information that combining resources is an option, that it has risk, that there is potential for coercion, that there can be mutual benefits; ZOOM and group activities cannot be billed to Medicaid [telehealth and teleservices can be billed and this needs clarification].
- b. What needs to happen to address the identified barriers: the system needs to be designed to meet consumers' needs rather than consumers' conforming to meet the system's design. Educating consumers on the full range of benefits and risks of combining budgets is part of that process. This is a BHDDH process.
- c. Timeline for developing solutions – March 2021.
- d. Anticipated timeline for full implementation – April 2021.
- e. Agency with primary responsibility – BHDDH.

*Note:  All timelines are dependent upon the continuation of current state staffing and budgetary levels.*