**Status of the Statewide Workforce Initiative as Ordered in the October, 2021 Action Plan and The May 3, 2022 Court Order**

It is September 1, 2022.

The Court's approach to the statewide workforce crisis has focused on four strategies:
- Wage increases
- Rate review and indexing as the basis for long term workforce stability
- Transformation funds to stimulate innovative strategies for building a community-based workforce
- A Statewide Infrastructure and Recruitment Initiative.

The court ordered Action Plan (October, 2021) ordered the State to submit a plan "to address statewide infrastructure and recruitment by November 15, 2021".  The Action Plan further states that "the plan will include a contract with a **private organization** to coordinate and **implement an intensive statewide recruitment initiative**".

The Monitor's November, 2021 Report further defined the expectations for this initiative. "…the Statewide Workforce Initiative described in the Action Plan should address the following topics:
1) Redefining the Position to Reflect Community-Based Responsibilities.
2) Effective Recruitment – Broadening Recruitment Populations and Demographics, Realistic Job Previews, Broad Public Campaigns, Creating Apprenticeships and Pathways for Secondary and Post-Secondary Students and other strategies referenced (in the report).
3) Training Requirements based on the various core competency sets listed (in the report) and unique needs of the Rhode Island workforce.
4) Credentialing Aligned with Training Requirements.
5) Effective Retention Strategies – Strategies that support personal and career growth including facilitating completion of degree programs, exploration of public service loan forgiveness, supporting staff to develop plans to achieve personal career goals."

These expectations were further detailed in the May 3, 2022 court order.  The intent of this Infrastructure and Recruitment Initiative, as has been stated in several emails and discussions, is to **supplement what providers and individuals who self-direct currently do**.

In completing my review of compliance with the May 3, 2022 court order, I have spoken with the majority of the providers, representatives of higher education institutions, the facilitators of the workgroups established during the initial meetings re: the Statewide Workforce Initiative, some families and individuals, Sage Squirrel and others (50+ people).  The most consistent criticisms about this initiative are: (1) the lengthy delays in implementation caused by the various state systems (it has been 10 months since the Action Plan) and (b) the lack of clarity about intent and outcome and the seeming lack of interconnectivity between the various activities that have been started in the last few weeks.  Simply said, the State has not met the expectations of the Court re: the Statewide Workforce Initiative described in the October, 2021 Action Plan and

the Court Order.  However, the Court does acknowledge the activities that have begun in recent weeks.

After discussions with Judge McConnell, the Court will take two actions:
- A Status Conference will be scheduled for October to assess if the State is substantially complying with the Action Plan, the May 3, 2022 Court Order and the benchmarks of the Consent Decree;
- If the State is found to not be in substantial compliance, fines will be issued retroactively to September 1, 2022.

To achieve substantial compliance with the expectations of the Court for the Infrastructure and Recruitment Initiative, the following must be completed and reported to the Monitor and to the Department of Justice a **preliminary draft of a comprehensive plan** (see below) **by September 30, 2022 and a final plan prior to October 7, 2022**.

1. A **comprehensive plan for addressing all the topics listed above and all the items in the May 3, 2022 Court Order.**  This plan must include (a) clear outcomes, (b) detailed action steps to achieve said outcomes, (c) identification of who has responsibility for each action step and (d) a timeline for completing each action step.  Further, the plan must identify **ALL** partners (public and private) involved in any/all of the action steps and the specific role and responsibilities of each partner.
2. Recognizing both the immediate workforce needs and the need to develop and institutionalize a long-term infrastructure for sustaining the workforce, the plan should include both immediate and-long term goals and strategies.
3. The State's selected vendor must convene a Coordinating Council.  Said Council must include (a) the selected vendor, (b) the designated facilitators of the work groups that were established in December, 2021, (c) one director of a provider organization, (d) one individual or family member who self-directs, (e) one individual or family member who receives support from a provider organization, (f) **one** representative from the Department of Behavioral Health, Developmental Disabilities, Hospitals and (g) one representative of the Department of Labor and Training.  The State's selected vendor shall be the convener of this Council.
4. The plan must provide detail re: the connection between this initiative and the parallel EOHHS Health Career Pathways and Pipelines Initiative.
5. To supplement existing recruitment strategies already being implemented by provider organizations and individuals who self-direct, the State's selected vendor(s) must (a) in collaboration with providers and individuals who self-direct, implement a statewide marketing campaign not connected to any one organization, (b) identify target populations for recruitment, (c) develop a centralized process for receiving applications, (d) continuously develop a pool of candidates, (e) conduct initial screening of applicants, (f) provide basic initial training to vetted candidates and (g) facilitate the onboarding of vetted candidates by providers and individuals who self-direct.  These details must be described in the plan.
6. To facilitate the development of internships for secondary and post-secondary students, the State's selected vendor(s) must, in collaboration with individuals, providers and institutions of higher education, (a) develop and publish an internship job description, (b)

     develop a centralized process for internship applications, (c) develop agreements with interested providers and individuals who self-direct and with the institutions of higher education, (d) develop a strategy for matching potential interns (across many disciplines and positions) with providers and individuals who self-direct, (e) resolve the logistical issues of payment and duration of internships and (f) provide initial preparation of interns. These details must be described in the plan.
7. Given that there is a parallel shortage of supervisory personnel, the plan must include strategies for recruiting and retaining supervisory staff and for addressing issues of wage compression reported by providers.
8. The plan should ensure that the selected vendors and other partners have employed and dedicated sufficient personnel to achieve the goals of a plan in a timely manner.
9. The Coordinating Council must develop monthly reports summarizing progress on the goals and action steps detailed in the plan…and report the number of applicants and the number of new hires.  The reported numbers should differentiate between the applicants recruited directly by providers or individuals who self-direct and applicants recruited through the activities of the State's selected vendor(s) and its partners.  The reported number of new hires should differentiate between new hires by provider organizations and new hires by individuals who self-direct.  Reports should be submitted directly to the Monitor by the Coordinating Council, not by state agencies.  The first report will be due October 15, 2022.